471 So.2d 778 (1985)
STATE of Louisiana, Plaintiff-Respondent,
v.
Jimmy D. CRAWFORD, Defendant-Applicant.
No. 16989-KW.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*779 Culpepper, Teat, Caldwell & Avery by James D. Caldwell, Jonesboro, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Jonesboro, John M. Ruddick, Asst. Dist. Atty., Haynesville, for plaintiff-respondent.
Before HALL, FRED W. JONES, Jr., and NORRIS, JJ.
HALL, Judge.
The defendant, Jimmy D. Crawford, was charged by Bill of Information with the offense of negligent injuring in violation of LSA-R.S. 14:39. In a bench trial, the defendant was found guilty as charged and sentenced to be incarcerated in the parish jail, subject to public works, for a period of three (3) months and that he pay a fine of $250.00 and all costs of court. In default of fine and costs, the Court ordered that the defendant be incarcerated in the parish jail, subject to public works, for an additional thirty (30) days. The imposition of the jail sentence was ordered suspended and the defendant placed on unsupervised probation for a period of one (1) year. This court subsequently granted defendant's application for a writ of review. In the defendant's first assignment of error, the defendant contends that the trial court erred in finding that the defendant's actions constituted criminal negligence, an essential element of the crime of negligent injuring. Finding merit to defendant's argument, we reverse.
Late in the afternoon of March 31, 1984, a white pick-up truck driven by the defendant collided with an automobile proceeding in the opposite direction driven by Rebecca Lynn Atkins, resulting in injuries to Ms. Atkins and others. The accident occurred on Louisiana Highway 146 in Claiborne Parish, east of Homer, Louisiana.
At trial, the state presented the testimony of Rebecca Lynn Atkins, the victim of the alleged crime. Ms. Atkins testified that on the date of the accident she remembered leaving her trailer home in Ruston and proceeding to her parents' home near Homer. However, Ms. Atkins has no memory of the accident or events leading up to the accident.
The witnesses to the accident present contradictory versions of how the accident occurred. Frances Hunter testified that the Atkins' vehicle was behind her vehicle for approximately ten miles as she travelled west on Highway 146. Frances was following her father, Jerry Hunter, who was driving the vehicle in front of her. When Frances observed her father's vehicle swerve to the right, she also moved over to the right and observed the oncoming white pick-up truck of the defendant; however, she did not see the truck cross the center line or collide with the Atkins' vehicle. Jerry Hunter testified that as he travelled westbound on Highway 146 he rounded a curve when he observed the white pick-up truck abruptly veer to its left towards the center line. Mr. Hunter testified that he abruptly veered to his right toward the off-side of the road. Mr. Hunter did not observe the vehicle cross the center line. As Mr. Hunter veered to the right, Mr. Hunter glanced in the rearview mirror to watch his daughter's vehicle. After glancing back to the highway ahead of him, Mr. Hunter's son, Lee Hunter, stated, "Dad, they hit." Mr. Hunter looked in the mirror again and observed the pick-up truck on its side sliding off the south side of the highway.
Lee Hunter testified that he also observed the white pick-up truck suddenly veer over to the left towards the center line; however, he did not see the pick-up truck cross the center line. Additionally, Lee did not see the initial impact between the defendant's pick-up truck and the Atkins' vehicle.
*780 James Baker, Trooper First Class for the Louisiana State Police, investigated the accident. Trooper Baker testified that when he arrived at the scene the two vehicles which had apparently collided had come to rest on opposite sides of the highway. Trooper Baker smelled what appeared to be alcohol upon the breath of the defendant. The defendant's blood alcohol content was later found to be .029g%, a negligible amount. Trooper Baker testified as an expert in the field of accident investigation and stated that it was his opinion that the defendant's pick-up truck crossed the center line of the highway into the path of travel of the Atkins' vehicle when the collision occurred. After the testimony of Trooper Baker, the state rested its case.
The defendant testified that the Atkins' vehicle swerved into his lane of travel. Rob Kudick and Theresa Giles, passengers in the defendant's truck, both testified that the Atkins' vehicle crossed over into the defendant's lane of travel.
On rebuttal, Ray Heard, an accident reconstruction expert, concluded that the point of impact occurred in Ms. Atkins' lane of travel. Heard based his conclusion on the location of spilled battery acid, spilled oil, scraps on the highway, and the final resting place of both vehicles. Additionally, Heard testified that due to the relative speed of the approaching vehicles, it might appear to the occupants of the defendant's vehicle that the Atkins' vehicle had crossed into their lane when in fact the defendant's vehicle had crossed into the Atkins' lane of travel.
At the conclusion of the trial, the court reviewed the evidence presented by the state and the defendant and concluded that the state had carried its burden of proving the defendant guilty of the crime of negligent injuring. The trial court found that the evidence indicated that the defendant crossed the center of the highway into the oncoming lane. Specifically, the trial court concluded that the crossing of the center line into the other lane was gross negligence. It is the defendant's contention that the trial court committed an error of law in equating the crossing of the center line of a highway with gross negligence, thereby constituting criminal negligence.
Under LSA-R.S. 14:39, negligent injuring is the inflicting of any injury upon the person of another by criminal negligence. Under LSA-R.S. 14:12, criminal negligence exists when, "although neither specific nor general criminal negligence is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."
The reporter's comment to LSA-R.S. 14:12 states:
... negligence is defined as a combination of action or non-action plus a certain state of mind. Unlike the situation where intent, or adversion to consequences, is involved here the state of mind is rather negative, and consists in a disregard of consequences. As a result, the offender falls far below a certain standard of care which is defined in this section in the traditional fashion. Criminal negligence, in fact, corresponds to the concept of "gross negligence" in tort law. See Restatement of the Law of Torts (1934) §§ 282-284, 500.
Criminal liability is always predicated not upon mere negligence or carelessness but upon that degree of negligence or carelessness which is denominated "gross" and which constitutes so great a departure from that of a reasonable man that a reasonable man would have realized the risk. Thus, the actor's conduct reflects a reckless disregard for the safety of another.
Restatement Second of the Law of Torts § 500 provides:
The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a *781 high degree of probability that substantial harm will result to him.
In State v. Jones, 298 So.2d 774 (La. 1974), the defendant was attempting to pass another vehicle. When he saw a car approaching in the opposite lane, he attempted to pull back into his own lane. While attempting to return to his own lane, the defendant struck the rear of another car, causing it to leave the road. A passenger in this vehicle was killed. There was no evidence presented at trial that the defendant had been drinking. The Supreme Court found that the evidence produced by the state tends to support the conclusion that the negligence of the defendant caused the accident. However, the court found that this does not constitute proof of criminal negligence. Therefore, the Supreme Court reversed the defendant's conviction.
In State v. Moak, 387 So.2d 1108 (La. 1980), the defendant was driving within the proper lane of travel when he saw the bright lights of what he thought was an oncoming car in his lane of the road. Fearing a head-on collision, he applied his brakes and eased his car onto what he thought was the shoulder. Instead, his car went down into a ditch that ran along side of the shoulder and then bounced up and hit a car which was parked on the shoulder of defendant's side of the road with its lights on. A twelve year old boy standing by the left front fender of the parked car was fatally injured as the defendant's car collided with the parked car. The defendant was charged with negligent homicide. A blood alcohol test was performed on the defendant and indicated that the blood contained 0.05 per cent alcohol. The Supreme Court found that the defendant "did what any reasonable man would do to avoid the accidenthe pulled over to the shoulder on his side of the road." The court found that the facts at best show only ordinary negligence. Therefore, the Supreme Court reversed the defendant's conviction.
In State v. Calvin, 337 So.2d 500 (La. 1976), two witnesses observed the defendant's vehicle for approximately three to five miles "going all over the road." After unsuccessfully attempting to stop the defendant, the witnesses observed the defendant collide head-on with another vehicle after he had swerved into the opposite lane in the path of an oncoming vehicle. The officer who responded to the scene of the accident had a cold and could not detect the odor of alcohol on the defendant's breath. Additionally, the officer was unable to obtain a valid blood alcohol test from the local hospital. The Supreme Court concluded that the defendant's conduct under these circumstances amounted to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances and therefore affirmed the conviction.
The facts of the instant case are more like those in Jones and Moak where the court found ordinary negligence than those of Calvin where the court found that the defendant's conduct was a gross deviation below the standard of care expected of a reasonably careful man under the like circumstances. In the present case, the defendant testified that he had consumed three or four beers in the afternoon preceding the accident. However, the defendant's blood alcohol of 0.029g % belies any indication of intoxication. There was no evidence that the defendant was driving in an erratic manner prior to the point when the defendant abruptly veered to his left when rounding a curve. Although the evidence is contradictory, a rational trier of fact could conclude from the evidence that the defendant crossed the center line of the highway into the oncoming lane of the Atkins' vehicle. There is no evidence that defendant's action in driving across the center line was anything more than inadvertant carelessness or negligence. While the crossing of the center line would constitute ordinary negligence, we find that this fact alone is insufficient to conclude that the defendant's actions constituted gross, criminal negligence. The evidence does not support a conclusion that the defendant's conduct reflected a reckless disregard for the safety of another. Therefore, we conclude *782 that the trial court erred in equating the crossing of the center line with gross negligence.
Having found that the state failed to prove an essential element of the crime of negligent injuring, i.e. criminal negligence, the defendant's remaining two assignments of error will not be addressed. For the reasons assigned herein the defendant's conviction is reversed, the sentence is vacated, and the charges against the defendant are dismissed.
REVERSED.