525 So.2d 1235 (1988)
STATE of Louisiana
v.
Adele GARRETT.
No. 87 KA 1222.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*1236 Mark Rhodes, Asst. Dist. Atty., Houma, for plaintiff and appelleeState.
Alexander Doyle, Indigent Defender Bd., Houma, for defendant and appellant Adele Garrett.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
Adele Garrett (defendant) was charged by a bill of information with negligent homicide, in violation of La.R.S. 14:32. She pled not guilty and, after a trial by jury, was found guilty as charged. She received a sentence of four years at hard labor. Additionally, she was fined $500 and ordered to pay an additional $500 to the Indigent Defender Board. Defendant has appealed, alleging three assignments of error.

FACTS
At approximately 4:00 a.m. on January 8, 1983, defendant was driving west on U.S. Highway 90 outside of Houma, Terrebonne Parish, Louisiana, when she struck a pedestrian, George Dion. When the accident occurred, defendant was driving a one-ton Dodge flatbed truck leased to Acme Truck Lines. The truck was used to haul oil field equipment, and defendant was employed by Acme as a hotshot driver.
At trial, defendant related the following details. On the night of the accident, she had been to two bars but had not been drinking alcoholic beverages because she was on call; that she went to Johnny's Country Bar in Bourg, Louisiana, at approximately 5:30 p.m., where she met Robert Aucoin; that while at Johnny's, she ate a sandwich, drank soft drinks, and shot pool; that at approximately 1:00 a.m., she left Johnny's and gave Robert Aucoin a ride home.
Defendant further testified that, after she took Robert Aucoin home, she started to drive to her home but decided to go to another bar; that she arrived at the Blues II, located east of Houma on U.S. Highway 90, at approximately 2:00 a.m.; that someone bought her a beer, but she drank less than one-quarter of it; that she met Scott Sillman while shooting pool and agreed to give him a ride home; that they left the Blues II around 4:00 a.m. and proceeded west on U.S. Highway 90 toward Houma.
The accident occurred on a curve in the highway located between the intersections of Bayou Blue Road and Coteau Road. Defendant testified that she was going between 45 and 50 miles per hour when she observed Dion approximately 500 feet away; that he was staggering on the shoulder of the road and coming toward her; that she slowed down to 30 or 35 miles per hour as she approached Dion, but he began waiving his arms and suddenly jumped out in front of her vehicle; and that she tried *1237 to avoid him but struck him with the right front side of the truck. Defendant stopped the truck but was upset and unable to get out. She testified that Scott Sillman got out, looked at the victim, and stated: "We need to call for some help. The guy's alright"; that they drove to a nearby gas station, but it was closed and neither of them had change for a phone call; that Sillman noted that she had already left the scene of the accident and the best thing for them to do would be to go to his house and call the police from there; that she agreed and took him home; that she was very upset and relied on Sillman to call the authorities; that she later discovered that Sillman was on "parole" and did not call the police because he had been drinking at a bar and his parole could be revoked; that a day or two later, she learned from a newspaper article that Dion had died; and that she never contacted the authorities.
The testimony of Robert Aucoin, who is now defendant's husband, corroborated defendant's testimony about the time she arrived at and departed from Johnny's Country Bar. He testified that defendant had not consumed any alcohol while at Johnny's and that she gave him a ride home. Finally, he testified that, when he saw defendant again, which was four or five days later, she told him about the accident and said "the guy stepped out in front of her."
Within a few days after the accident, Sillman contacted David Fonseca and asked him if he could repair the damage to the truck. Fonseca testified that the right front quarter-panel of the truck was destroyed and the right front light was smashed; that he began the repair work, but when Sillman told him that the truck had been in an accident in which a pedestrian had been struck, he stopped working on the truck; that he showed defendant a newspaper article about the accident and she began crying; and that defendant told him that she had been drinking at the Blues II "and on the way back she hit a man on the side of the road."
On cross-examination, Fonseca testified that defendant had told him that she had left the road when she hit the pedestrian and that she had not seen him before the accident occurred. Two weeks later, Fonseca reported this information to the police.
Louisiana State Trooper Tyrone White testified that he arrived at the scene of the accident at 5:49 a.m. and investigated the accident and took pictures of the scene. Dion was dead at that time. His investigation led to the owner of the truck and Acme Truck Lines, where he learned that defendant was driving the truck for Acme at the time of the accident. Two months after the accident, he observed the damage to the right front side of the truck. When Trooper White attempted to testify about the estimated point of impact between the truck and the pedestrian, defense counsel objected on the ground that Trooper White had not been qualified as an expert in accident reconstruction. The trial court sustained this objection. Trooper White stated he found two sets of scuff marks on the 9-foot, 7-inch shoulder of the highway and that scuff marks could not be matched to tires. However, on cross-examination, he gave the opinion that the scuff marks he saw were made by the vehicle that hit Dion.
The coroner's report filed in evidence by joint stipulation (see also La.C.Cr.P. art. 105) shows that Dion sustained the following injuries which caused his death:
a. Fracture-dislocation of the cranio-cervical junction, transection of the medulla.
b. Fractured cervical spine at the 5th-6th vertebra.
c. Fractured skull base.
d. Fractured, dislocated, lumbar spine with transected cauda equina.
e. Fractured ribs.
f. Multiple abrasions, lacerations and contusions.
Dr. Victor Tedesco, the Terrebonne Parish Coroner, was unable to testify at trial. However, it was stipulated that Dr. Tedesco's examination revealed that Dion was intoxicated at the time of his death. His blood alcohol content was .19. It was further stipulated that a blood alcohol content *1238 of .19 would impair a person's balance, depth perception, and overall ability to make judgments.

SUFFICIENCY OF EVIDENCE

(Assignments of Error Numbers 2 and 3)
On appeal, Garrett advances the following argument to support these assignments of error:
The defendant submits that the verdict of the jury was contrary to the law and to the evidence. After a review of all the evidence brought out at trial, no reasonable trier of fact could have failed to find a reasonable doubt as to the accused's guilt.
The state has responded to this argument with the following:
Defendant-appellant asserts no facts or testimony to establish a basis for relief. In light of the fact that appellee is presented with nothing to rebut, the State submits the record in toto as ample evidence of proven guilt.
Garrett is charged with negligent homicide, in violation of La.R.S. 14:32, which provides as follows:
Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
The bill of information charges that "Adele Garrett ... on or about the 8th day of January [1983] ... in the Parish of Terrebonne... did ... unlawfully and negligently operate a motor vehicle, ... upon a highway ... and was involved in an accident, thereby killing one, George Dion, in violation of La.R.S. 14:32...." The essential elements of the offense as charged are:
(1) Adele Garrett operated a motor vehicle upon a highway in Terrebonne Parish, Louisiana, on or about January 8, 1983;
(2) Garrett operated the motor vehicle in a criminally negligent manner; and
(3) Garrett's operation of the vehicle caused the death of George Dion.
See State v. Fontenot, 408 So.2d 919 (La. 1981). Garrett's plea of not guilty placed upon the state the burden of proving each element of the offense charged beyond a reasonable doubt. La.R.S. 15:271; State v. Humphrey, 412 So.2d 507 (La.1981); State v. Gomez, 433 So.2d 230 (La.App. 1st Cir.), writs denied, 440 So.2d 730 and 441 So.2d 747 (La.1983).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the offense beyond a reasonable doubt. See La. C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).

Proof of Criminal Negligence
Criminal negligence is defined in La. R.S. 14:12 as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
In State v. Crawford, 471 So.2d 778, 780-781 (La.App. 2nd Cir.1985), this definition is discussed as follows:
The reporter's comment to LSA-R.S. 14:12 states:
... negligence is defined as a combination of action or non-action plus a certain state of mind. Unlike the situation where intent, or adversion to consequences, is involved here the state of mind is rather negative, and consists in a disregard of consequences. As a result, the offender falls far below a certain standard of care which is defined in this section in the traditional fashion. Criminal negligence, in fact, corresponds to the concept of "gross negligence" in tort law. See Restatement of the Law of Torts (1934) §§ 282-284, 500.
Criminal liability is always predicated not upon mere negligence or carelessness *1239 but upon that degree of negligence or carelessness which is denominated "gross" and which constitutes so great a departure from that of a reasonable man that a reasonable man would have realized the risk. Thus, the actor's conduct reflects a reckless disregard for the safety of another.
Restatement Second of the Law of Torts § 500 provides:
The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.
See also La.C.C. art. 3556(13).
Evidence which only shows ordinary negligence is not sufficient to prove negligent homicide. State v. Jones, 298 So.2d 774 (La.1974).
Garrett testified she was driving the truck at a lawful speed in her proper lane of travel when Dion jumped in front of the truck. Had this testimony been accepted by the jury, it would have exonerated her. See, for example, Danos v. Richoux, 356 So.2d 90 (La.App. 1st Cir.), writ denied, 358 So.2d 642 (La.1978). However, the jury verdict indicates that the jury rejected Garrett's version of the facts and relied on Fonseca's testimony about the admissions Garrett made to him. Thus, we must review Fonseca's testimony concerning these admissions to see if the evidence is sufficient.
Fonseca's pertinent testimony is as follows:
Q. What did she tell you happened?
A. She told me that her and Scottie went to the Blue's II and on the way back she hit a man on the side of the road.
Q. Did she tell you if they had been drinking?
A. Yes, she did.
Q. Did she tell you where the man on the road was when she hit her [sic]?
A. Yes, she did.
Q. What did she say?
A. She said he was in between Bayou Blue and Coteau.
Q. Where on the road? On the road, off the road, middle of the road?
A. She said she hit the man on the side of the road.
. . . .
Q. Now, Ms. Garrett did say that, just to make it straight before the Jury, that she hit a man on the side of the road; were those her words?
A. She told me she went off the road and hit a man.
Q. Before when Mr. Rhodes asked you that your testimony was she hit a man on the side of the road. Now you're changing your testimony?
A. There was a lot she said. She said she didn't even see the man. She didn't say anything untilwell, that was the other person that say that also so I'm not going to say that. But she said she did not see the man and she went off the road.
Construing Fonseca's testimony and the other evidence of record in the light most favorable to the state, Garrett left the roadway and struck Dion on the shoulder. This evidence does not prove criminal negligence as a matter of law. Inadvertently leaving the traveled portion of the highway (the roadway) and driving on the shoulder of the highway does not constitute even ordinary (simple) negligence per se. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Driving across the centerline of the highway into the path of an oncoming vehicle is only ordinary negligence. Crawford, 471 So.2d at 781-782. See also State v. Moak, 387 So.2d 1108 (La.1980); State v. Jones. In Michel v. Ascension Parish Police Jury, 524 So.2d 1369 (La.App. 1st Cir.1988), this court held that driving in the oncoming lane of travel and off of a bridge on the wrong side was not contributory (ordinary) negligence. There is no evidence to show *1240 that Garrett was speeding or driving erratically prior to the accident.
There is no evidence of record to show that Garrett was driving while intoxicated, in violation of La.R.S. 14:98. No blood alcohol, photoelectric intoximeter (PEI) or field sobriety tests were made. Garrett testified she only drank a part of a beer. Fonseca testified Garrett told him "they" (she and Sillman) had been "drinking." Fonseca did not state what or how much Garrett said she had been "drinking."
In January of 1983, driving while intoxicated, in violation of La.R.S. 14:98, was defined for purposes of this case as "operating of any motor vehicle ... while under the influence of alcoholic beverages...." Pursuant to La.R.S. 32:662(A), if a person had alcohol of 0.05 percent or less by weight in his blood, he was "presumed... not under the influence of alcoholic beverages." (Emphasis added.) When these statutes are read in pari materia, it is clear that merely driving a motor vehicle after drinking an alcoholic beverage is not an offense; the drinking of alcoholic beverages only rises to proscribed conduct when a person is "under the influence" and drives a motor vehicle. The mere fact that a person has consumed alcohol prior to a vehicular accident does not prove that the person was "under the influence" or that the alcohol consumption caused the accident. Whittington v. American Oil Company, 508 So.2d 180 (La.App. 4th Cir.), writ denied, 512 So.2d 436 (La.1987); Carter v. Alexis, 356 So.2d 445 (La.App. 1st Cir. 1977). Compare City of Alexandria v. Webster, 490 So.2d 747 (La.App. 3rd Cir. 1986) and Crawford, 471 So.2d at 781-782 with State v. Wheat, 471 So.2d 1027 (La. App. 1st Cir.1985). See also State v. Hargrave, 411 So.2d 1058 (La.1982).

Conclusions
There is no evidence to show that Garrett was criminally negligent when she left the roadway and struck Dion on the shoulder. There is no evidence to show that Garrett was driving the truck while under the influence of intoxicating beverages when the accident occurred. The state has failed to prove criminal negligence beyond a reasonable doubt.[1]
These assignments of error have merit.[2]

DECREE
For the foregoing reasons, the conviction and sentence are reversed, and the defendant is ordered discharged.
REVERSED; DEFENDANT DISCHARGED.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting.
My disagreement with the majority opinion is over its criminal negligence analysis. The majority has decided that defendant's conduct was at most ordinary negligence. We all agree that defendant left the road and struck the victim, who was off the roadway and on the shoulder. We will never know how much she had to drink because she left the scene.[1] We do know that the next day she told David Fonseca that she had been drinking when she struck the victim. Defendant's flight was certainly the grossest form of guilty knowledge. David Fonseca testified that the damages to the truck were extensive, as the passenger side quarter panel was destroyed and a front headlight was smashed. Notwithstanding this violent blow, defendant *1241 left the victim at the scene[2] and did not even call for help because when she went down the road to the store she did not have any money for a telephone call.
I would affirm because I believe the state met its burden of proof. LSA-C. Cr.P. art. 821.
I respectfully dissent.
NOTES
[1] The facts show Garrett committed hit and run, in violation of La.R.S. 14:100. However, the state did not charge her with committing negligent homicide by failing to render reasonable aid; she was charged with committing negligent homicide by "unlawfully and negligently operating a motor vehicle." Further, there is no evidence to show whether giving aid and/or summoning help would have saved Dion's life.
[2] Because of our holding on assignments of error numbers 2 and 3, we need not address assignment of error number 1 concerning the admissibility of the objected to photograph in state exhibit 2.
[1] She had been in barrooms shooting pool since 5:30 p.m. on January 7, 1983. The accident occurred at 4:00 a.m. on January 8, 1983, just after she left the Blues II Lounge.
[2] Defendant testified that Scott Sillman got out, looked at the victim, and stated, "We need to call for some help. The guy's all right."