EDWARDS, Judge.
After a jury trial, Shelly Pearson was convicted of negligent homicide, a violation of LSA-R.S. 14:32. The trial court imposed a sentence of five years at hard labor, suspended it, and placed defendant on supervised probation for five years, with several special conditions. Defendant appealed, urging five assignments of error.[1]
*408 FACTS
On December 13, 1985, Shalon Cornett, a seven year old girl who was a passenger in a car driven by her father, Kenneth Cor-nett, was killed when the defendant’s pickup truck crossed the center line and crashed into the Cornett’s vehicle. The accident occurred on a two-lane blacktop road; the defendant was travelling north and the Cornetts were southbound.
Defendant claimed that he saw another car run two stop signs on a crossroad and pull into the oncoming lane. He testified that he was afraid the car would hit his vehicle and also was blinded by its headlights. He further testified that he did not see the Cornett’s vehicle until the other car was past him. Skidmarks on the highway indicated the defendant attempted to stop his truck before he collided with the Cor-nett’s car. From gouge marks in the blacktop, investigators determined that the point of impact was four feet over the center line in the Cornett’s lane. Kenneth Cornett testified that he saw defendant’s truck veer into his lane seconds before the collision, but he was unable to stop his car in time.
Allen Gilbert observed the collision from Highway 431, approximately fifty feet from the point of impact. Mr. Gilbert testified that he could tell from the position of the headlights of the vehicles that a collision was imminent. He also testified that he believed defendant crossed the center line and rounded the curve in the Cornett’s lane based on the illumination of defendant’s headlights on the banked curve. Mr. Gilbert was positive that the accident occurred in the lane nearest him, the southbound lane. He went to the assistance of the passengers in both vehicles and stated that he smelled alcohol in defendant’s truck.
Robert Landry, the State Trooper who investigated the accident, testified that he noted the smell of alcohol while he was assisting defendant. He also noticed two empty beer bottles on the floorboard by the driver’s seat, as well as a third bottle that was partially full. He further testified that, after defendant had been removed to a hospital and advised of his constitutional rights, he admitted that he had been drinking before the accident. Trooper Landry was unable to recall the exact amount defendant related he had consumed, but testified that he believed defendant reported that he had had “a couple of beers” at his house before the accident. While defendant was hospitalized, a blood alcohol test was administered. The results of the test were suppressed before trial.
REFERENCE TO INCULPATORY STATEMENT
In this assignment of error, defendant submits that the state erred by referring to his inculpatory statement in its opening remarks. He claims the state’s remarks were in contravention of LSA-C.Cr.P. art. 767, which provides: “The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant.”
While addressing the jury, the assistant district attorney stated, “[W]e are going to show that Mr. Pearson was questioned by the State Trooper and he admitted to drinking prior to this accident.” Defendant immediately objected and moved for a mistrial. The court permitted the attorneys to argue the motion out of the presence of the jury. After ascertaining that the state had given defendant notice of its intent to introduce the statement, the court denied the motion for a mistrial and offered to admonish the jury to disregard it. The court later instructed the jurors that the district attorney was not authorized to make the remark as part of his opening statement and that he should not have done so. The court further instructed the jurors to disregard that portion of the opening statement.
*409 Defendant now claims that the court’s admonition to the jury was not sufficient to remedy the state’s error. He submits that the state could prove the existence of gross negligence, an essential element of the crime of negligent homicide, only by showing that he was intoxicated when the accident occurred. Therefore, he claims, the admonition could not cure the prejudicial effect of the state’s reference to defendant’s admission that he had been drinking immediately before the accident.
Defendant’s claim that the state could prove gross negligence only by showing that he was intoxicated is without merit. “Intoxication is not an element of the offense of negligent homicide....” State v. Doucet, 443 So.2d 777, 783 (La.App. 3d Cir.1983). LSA-R.S. 14:32 requires the state to prove defendant was criminally negligent and that a killing resulted from his conduct. See State v. Allen, 440 So.2d 1330, 1332 (La.1983).
The purpose of the statutory scheme of LSA-C.Cr.P. arts. 766-768 is to prevent surprise and allow adequate time for the preparation of a defense. See State v. Russell, 416 So.2d 1283,1288 (La.), cert. denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982). In the instant case, the record reflects defendant was notified of the state’s intent to introduce his statement. In addition, defendant testified at trial that he had been drinking beer before the accident. This assignment of error is without merit.
INTRODUCTION OF DEFENSE EXHIBITS
In assignments of error two and four, defendant submits that the trial court erred by refusing to admit into evidence two defense exhibits, a videotape of the intersection where the accident occurred and the dates of previous accidents which occurred there.
Defendant's investigator was permitted to testify that he had researched state police records of accidents at the location and had learned that nineteen accidents occurred at this intersection in the three years preceding the instant offense. The trial court would not allow the investigator to answer whether any of the accidents occurred near the time of this accident.
Defendant introduced photographs of the location which the investigator had taken during daylight hours several months after the accident. He also offered a videotape as evidence of traffic flow patterns at the intersection. The state objected to the admission of the videotape on the ground that it was not an accurate representation of the conditions of the movement of the vehicles on the night of the accident and the traffic flow of other vehicles was not relevant. After finding that the tape showed several vehicles that approached the intersection in the same lane of travel as Mr. Cornett cross the center line, the court ruled that the tape was inadmissible because it would present the jury with the idea that Mr. Cornett might have driven into the defendant’s lane.
All evidence which is relevant to a material fact issue, necessary to be known to explain a relevant fact, or which supports an inference raised by such a fact is admissible, except as otherwise provided by law. LSA-R.S. 15:435; State v. Kahey, 436 So. 2d 475, 491 (La.1983). Relevant evidence is that evidence which either tends to show or to negate the commission of the offense and the intent. LSA-R.S. 15:441. Relevancy of evidence is determined by the purpose for which it is offered. LSA-R.S. 15:442.
The evidence of other accidents occurring near the same location was offered to indicate that this accident was the result of the inherent dangerousness of the intersection, rather than defendant’s criminal negligence. Defendant established that approximately six accidents occurred per year at this intersection.
In State v. Parker, 436 So.2d 495, 498 (La.1983), the defendant, also accused of negligent homicide, offered evidence of a “killer intersection” where seven to eight accidents per year occurred. The trial court found that the evidence was not relevant. The Supreme Court affirmed, noting that each accident was the result of a *410 unique set of facts and circumstances. The court concluded that, although the offered evidence had slight probative value on the issue of defendant’s negligence, the risks were great that the jury would have been confused by this evidence or might have had its attention deflected from the central issue of the case, that being whether or not the defendant acted with criminal negligence in causing the victim’s death. Id.
Through the testimony of his investigator and photographs of the intersection, defendant was permitted to illustrate the character of the location where the accident occurred. Defendant did not attempt to establish any relevance for the timing of the accidents which might have increased the probative worth of the evidence. We find, therefore, that the trial court did not err by finding the evidence of the dates of the other accidents was not relevant.
We also find no error in the court’s ruling prohibiting defendant from introducing the videotape without the state’s consent. “Photographs [and videotapes] which illustrate any fact, shed light upon any factor at issue in the case, or reliably describe the person, place or thing depicted are admissible, provided that their probative value outweighs any prejudicial effect.” State v. Burdgess, 434 So.2d 1062, 1066 (La.1983). However, even a courtroom demonstration by a sworn witness is subject to the requisite foundation of similarity of circumstances. State v. Ballard, 351 So.2d 484, 488 (La.1977). A trial judge has great discretion in permitting or refusing in court demonstrations. State v. Rault, 445 So.2d 1203, 1208 (La.), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984). The court did not abuse its discretion in holding that the prejudicial effect of the videotape outweighed its probative value. These assignments of error are without merit.
EVIDENCE OF MEDICAL CONDITION
By assignment of error number three, defendant submits that the trial court erred by refusing to permit him to introduce evidence of his medical condition which might have contributed to the accident. In brief, defendant contends the court erred by sustaining the state’s objection on the grounds of relevancy.
Initially, we note that defendant’s argument concerns the admissibility of the injuries he received in the accident. Evidence of a medical condition which might have contributed to the accident would possibly be admissible in mitigation of a charge of criminal negligence. However, the extent of the injuries sustained by the defendant in the accident does not relate to a possible contributing cause.
Defendant claims that evidence of his injuries was relevant to refute the trooper’s testimony that he appeared intoxicated by establishing that he was unable to stand and, therefore, many of the normal signs of intoxication could not be observed. Trooper Landry testified, however, that he smelled a “slight to moderate” odor of alcohol on defendant’s breath when he was attempting to aid the defendant and that he saw three beer bottles on the floorboard of defendant’s truck. He also testified that defendant’s eyes were glassy and bloodshot. Trooper Landry specifically testified that his opinion that defendant was under the influence of alcohol was based on the detection of breath alcohol and the appearance of defendant’s eyes. Thus, evidence of defendant’s injuries was not relevant to refute Trooper Landry’s testimony that defendant appeared to be intoxicated because the trooper’s opinion was not based on defendant’s inability to stand or walk. Therefore, considering the purpose for which the evidence was offered, the trial court did not err by finding evidence of defendant’s injuries did not tend to negate the commission of the offense and, thus, was not relevant. See LSA-R.S. 15:441; 15:442.
SUFFICIENCY OF THE EVIDENCE
By assignment of error number five, defendant submits that the evidence is not sufficient to sustain the verdict. He contends the state failed to prove the existence of criminal negligence because the intersection where the accident occurred was inherently dangerous. Defendant fur *411 ther claims a finding of negligence was precluded because the collision occurred on a cold, rainy night when the highway was particularly slick.
“Negligent homicide is the killing of a human being by criminal negligence.” LSA-R.S. 14:32. “Criminal negligence exists when ... there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.” LSA-R.S. 14:12. The state is required to show more than a mere deviation from the standard of care. Ordinary negligence does not constitute proof of criminal negligence. State v. Jones, 298 So.2d 774, 776 (La.1974); State v. Reynolds, 436 So.2d 1275, 1277 (La.App. 1st Cir.1983).
LSA-R.S. 14:32 provides that the violation of a statute or ordinance shall be considered only as presumptive evidence of criminal negligence. However, the trier of fact may “draw a permissible inference of criminal negligence from a violation of a statute or ordinance if the circumstances of the violation” so warrant. Reynolds, 436 So.2d at 1278.
This accident occurred at one end of a long, sweeping curve on La. Highway 431. Diagrams submitted by the investigating officer indicate that La. Highway 931 intersects Highway 431 at that end of the curve and appears to be a continuation of Highway 431. Trooper Landry testified, however, that a person turning onto Highway 931 would be required to veer slightly to the left at the intersection. Highway 431 is marked with a broken yellow line to indicate the flow of traffic around the curve, rather than straight onto Highway 931. Defendant lived near this intersection and was familiar with it.
Although defendant contends that he never crossed the center line, the gouge marks in the pavement established that the impact of the two vehicles occurred four feet over the center line in the Cornett’s lane. Defendant admitted that he intended to turn onto Highway 931, which would have required him to cross the broken yellow line and veer to the left. Defendant denied that he had begun to turn but the photographs of his disabled truck clearly show that its wheels were turned to the left. In addition, both vehicles sustained severe damage to the left front areas, a pattern consistent with a collision occurring as the result of defendant’s truck veering into the front of the Cornett’s car in order to make the turn.
Defendant also claims that the evidence that he drank only two small beers and a portion of a third was unrefuted.[2] He further contends that Trooper Landry testified that defendant’s behavior was consistent with his claimed consumption of two seven-ounce Miller “lite” beers. However, Trooper Landry did not testify that defendant appeared to have consumed only two small “lite” beers; rather, he stated that defendant appeared to be intoxicated when he was extricated from the truck.
Defendant testified that he was frightened by an automobile that ran a stop sign on Highway 931, pulling onto the highway facing him and that the collision with the Cornett’s car occurred immediately thereafter. However, neither Mr. or Mrs. Cor-nett saw this phantom vehicle pull onto the highway directly in front of them. Allen Gilbert, who was on Highway 931, did not see it either. From the verdict, it is apparent that the jurors disregarded defendant’s claim that another vehicle caused the accident and left the scene.
Our review of the evidence convinces us that any rational trier of fact could have reasonably found that defendant was guilty of more than a mere deviation from the reasonable man standard of care in the operation of his truck and that this gross deviation resulted in the death of Shalon Cornett. Defendant admitted that he had *412 been drinking beer during the evening before the accident took place. The evidence established that in attempting to negotiate a left turn, defendant crossed the center line directly into the vehicle driven by Kenneth Cornett. The jury could have reasonably inferred criminal negligence from defendant’s apparent failure to yield in attempting a left turn. Finally, the jurors could have reasonably found that defendant’s claims to have consumed only a few small “lite” beers and the influence of another vehicle in causing the accident were not credible.
After a careful review of the record, we conclude that a rational trier of fact viewing all of the evidence in a light most favorable to the prosecution could have found that Shalon Cornett died as a result of defendant’s criminal negligence. See State v. Mussall, 523 So.2d 1305 (La.1988). This assignment of error is without merit.
AFFIRMED.

. In his formal designation of errors, defendant claims as his sixth assignment of error that "[there are] other errors patent on the face of the record.” The record does not disclose the existence of such error. In brief, defendant advances an additional argument in which he claims that the trial court erred by refusing to permit him to question Kenneth Cornett about *408 citations for traffic offenses. This allegation was not assigned as error, nor does it constitute error patent on the face of the record. In accord with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of LSA-C.Cr.P. arts. 844 and 920, this court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. See State v. Wientjes, 341 So.2d 390, 391 (La.1976).

. In his brief, defendant requests this court to consider the fact that a blood alcohol test performed in the hospital revealed that the alcohol content of his blood was below the legal limits for intoxication. Since the blood alcohol tests were suppressed before trial, we decline to consider that factor. We note, however, that the trial court’s written reasons for sentencing recite that defendant’s blood alcohol content was .09% when it was tested after the accident.