LeBLANC, Judge.
Defendant, Stanley Prophet, was charged by bill of information with negligent homicide, in violation of La.-R.S. 14:32. After a trial by jury, he was found guilty as charged and was sentenced to five years at hard labor. Defendant has appealed, alleging four assignments of error, as follows:
1. The evidence is insufficient to prove defendant’s guilt beyond a reasonable doubt.
2. The trial court erred in allowing Dr. Richard Rathbone to testify over defense objection.
3. Without sufficient evidence of intoxication, the State failed to prove criminal negligence, an essential element of negligent homicide.
4. The trial court erred in denying defendant’s motion for post-verdict judgment of acquittal.
At approximately 11:00 a.m. on June 30, 1986, Stanley Prophet left Norwood, Louisiana, and drove south on Louisiana Highway 19. He had agreed to give Eddie Jackson, who lived in Wilson, Louisiana, a ride home. Just south of Norwood, they were involved in an automobile accident with Clarence Guillory, who was proceeding north on Louisiana Highway 19. Immediately after the accident, Mr. Jackson, who had been riding in the front passenger seat of Mr. Prophet’s vehicle, left the scene to summon help. Two ambulances arrived shortly after the accident, and the drivers of both vehicles were taken to hospitals. Mr. Guillory died the following day as a result of his injuries.
At trial, Jack Rish testified that, between 9:30 and 10:00 a.m. on the day of the accident, he observed Henry Dunn, Buddy Green, and defendant at a Texaco service station in Norwood drinking from a white plastic cup, which they passed among themselves. Mr. Rish specifically testified that he saw defendant drink from this cup. After the accident, Mr. Rish went to the service station, and found an empty Seagram’s whiskey bottle and some white plastic cups in a garbage can.
Eddie Jackson testified he had known defendant for many years. He stated that, on the morning of the accident, he first saw defendant at approximately 10:00 a.m. at a service station in Norwood drinking Seagram’s whiskey with Henry Dunn. Later, defendant agreed to give Jackson a ride home; and they left. Mr. Jackson testified that, before the accident, defendant crossed the center line of the highway two or three times and “slumped over like he was asleep.” This behavior frightened Mr. Jackson, who asked to get out of' the car. However, defendant increased his speed and told Mr. Jackson not to worry. Shortly thereafter, defendant again crossed the centerline of the highway and struck Mr. Guillory’s vehicle. At this point, Mr. Jackson got out of defendant’s car and left the scene to go for help.
Detective Arkell Merritt, a thirteen-year veteran of the East Feliciana Parish Sheriff’s Department was one of the officers who investigated .the accident. At trial, Merritt testified he smelled the odor of *775 alcohol on defendant’s breath. He stated defendant appeared intoxicated, explaining that defendant’s eyes were glassy and bloodshot, his speech was slurred, his movements were uncoordinated, and he was belligerent. According to Detective Merritt, defendant repeatedly denied that anyone else had been in his car, although it was obvious to him from the way the windshield was shattered that defendant was lying and there had been a passenger in his car. Detective Merritt testified he did not give defendant a field sobriety test because defendant was uncooperative and because of the possibility that defendant might fall and further injure himself.
Douglas Beauchamp, one of the emergency medical technicians who transported defendant to the hospital, testified that he could not recall any specific injury to defendant. However, he testified that defendant was “wobbly” and had an odor of alcohol on his breath.
Dr. Richard Rathbone, a deputy coroner for East Feliciana Parish, was the emergency room physician who treated defendant. He testified defendant was bloody, due to several lacerations, was “somewhat belligerent and smelled of alcohol.” He testified that, based upon his initial examination of defendant, he concluded that defendant was intoxicated.[1]
ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, THREE, AND FOUR:
In these assignments of error, defendant contends that there was insufficient evidence to prove, beyond a reasonable doubt, that he committed the offense of negligent homicide. He contends the trial court erred in allowing Dr. Rathbone to testify over defense objection. Defendant argues that, without Dr. Rathbone’s trial testimony, there was insufficient evidence of intoxication and, therefore, insufficient evidence of criminal negligence, an essential element of negligent homicide. Finally, defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal, which was also based on the alleged insufficiency of the evidence.
However, we note that the State is not required to prove intoxication in order to establish criminal negligence. Intoxication is not an element of the offense of negligent homicide. La.-R.S. 14:32 requires the State to prove that defendant was criminally negligent and that a killing resulted from his conduct. State v. Allen, 440 So.2d 1330, 1332 (La.1983); State v. Pearson, 529 So.2d 406, 409 (La.App. 1st Cir.1988).
La.-R.S. 14:12 provides:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the offense beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
In his brief to this Court, defendant cites State v. Garrett, 525 So.2d 1235, 1239 (La.App. 1st Cir.1988), for the proposition that: “[djriving across the centerline of the highway into the path of an oncoming vehicle is only ordinary negligence. This proposition was derived from State v. Crawford, 471 So.2d 778 (La.App. 2d Cir.1985), which involved a vehicular collision in a curve on Louisiana Highway 146. In Crawford as in Garrett, there was no evidence that the defendant had been driving erratically before the accident occurred. His blood alcohol content was only .029 grams percent. Reviewing the facts of the case, the Second Circuit concluded that, under the circumstances, Crawford’s crossing the centerline in a curve of the highway did not constitute criminal negligence.
*776 There is no evidence that defendant’s action in driving across the center line was anything more than inadvertant (sic) carelessness or negligence. While the crossing of the center line would constitute ordinary negligence, we find that this fact alone is insufficient to conclude that the defendant's actions constituted gross, criminal negligence. The evidence does not support a conclusion that the defendant’s conduct reflected a reckless disregard for the safety of another. Therefore, we conclude that the trial court erred in equating the crossing of the center line with gross negligence. 471 So.2d at 781-782.
To prove criminal negligence in the instant case, the State introduced evidence that defendant: (1) had been drinking on the morning of the accident; (2) drove very erratically before the accident; (3) refused to stop his vehicle at the request of a passenger who expressed fear as a result of his erratic driving; and (4) veered approximately four feet into the oncoming lane of travel and collided with Mr. Guillo-ry’s vehicle. The testimony of Messrs. Rish and Jackson established defendant was drinking whiskey before the accident occurred. Mr. Jackson testified that defendant crossed the centerline of the highway two or three times before the accident and “slumped” behind the wheel immediately before the accident occurred. According to Detective Merritt, there were gouge marks in the northbound lane of the highway approximately four feet from the centerline and debris further east from that point. Defendant’s vehicle came to rest almost entirely inside the northbound lane. There were no skidmarks. Pictures of the accident taken by Detective Merritt demonstrate the accident occurred in a section of Louisiana Highway 19 which appears to be straight, with low, rolling hills. Mr. Beau-champ recalled that the accident occurred in the middle of the day, in clear weather conditions..
Considering the above facts, the accident in the instant case is clearly distinguishable from the accident which occurred in Crawford. In our view, defendant’s actions constituted criminal negligence. After a careful review of the record, we conclude that a rational trier-of-fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that defendant was guilty of negligent homicide. See State v. Mussall, 523 So.2d 1305 (La.1988).
Defendant contends the trial court erred in allowing Dr. Rathbone to testify at the trial. His objection was based upon La.-R.S. 15:476, which provides:
No physician is permitted, whether during or after the termination of his employment as such, unless with his patient’s express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient’s physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient’s physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him.
Dr. Rathbone’s testimony did not disclose any “communication” made to him by defendant. Instead, Dr. Rathbone’s testimony was limited to defendant’s physical condition when he was examined at the emergency room by Dr. Rathbone. After disclosing defendant’s injuries, appearance, and behavior, Dr. Rathbone testified that he concluded defendant was intoxicated. We note that the same observations made by Dr. Rathbone about defendant’s appearance and behavior were made by Mr. Jackson, Detective Merritt, and Mr. Beau-champ. Furthermore, both Mr. Jackson and Detective Merritt concluded that defendant was intoxicated.
It could be argued that Dr. Rathbone’s testimony should have been disallowed because it disclosed “information that he may *777 have gotten by reason of his being such physician.” However, considering the principles for the application of an evidentiary privilege, we do not think that the physician-patient relationship would be injured by allowing emergency room doctors to testify about general information such a appearance and behavior of their patients. On the other hand, allowing such general information to be disclosed would benefit society by giving the trier of fact access to the truth. See State v. Aucoin, 362 So.2d 503, 505 (La.1978); State v. Berluchaux, 522 So.2d 600, 605 (La.App. 1st Cir.), writ denied, 531 So.2d 467 (1988).[2]
In any event, even if the physician-patient privilege should have been applied in this case to exclude Dr. Rathbone’s testimony about defendant’s intoxicated condition at the emergency room, we conclude that any error in overruling defendant’s objection on this point would not require reversal of this conviction. As noted above, Mr. Jackson, Detective Merritt and Mr. Beauchamp all testified about various aspects of defendant’s appearance and behavior. Furthermore, both Mr. Jackson and Detective Merritt arrived at the same conclusion regarding defendant’s condition as Dr. Rathbone, i.e., that defendant was intoxicated. Therefore, Dr. Rathbone’s testimony was cumulative and, even if erroneously admitted, was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921; State v. Darby, 403 So.2d 44, 48 (La.1981), cert. denied, 454 U.S. 1152, 102 S.Ct. 1022, 71 L.Ed.2d 308 (1982); State v. Vincent, 338 So.2d 1376, 1385 (La.1976).
For the above reasons, these assignments of error lack merit.
CONVICTION AND SENTENCE AFFIRMED.

. Dr. Rathbone took a blood sample from defendant. Before trial, however, the results of defendant's blood alcohol test were ruled inadmissible.

. Cf. State v. Carter, 383 So.2d 357 (La.1980), in which a conviction was reversed due to trial court error in allowing a doctor to testify, over defense objection, about an inculpatory statement (i.e., a communication) made to the doctor by defendant during treatment in an emergency room.