jiHIGHTOWER, Judge.
After a two-day bench trial, a judge found Thomas D. Wilcoxon guilty as charged of negligent homicide, LSA-R.S. 14:32. After considering the Louisiana Felony Sentencing Guidelines and a presentence investigation report, the court deviated from the suggested grid cell and imposed the maximum term of imprisonment, five years at hard labor. Wilcoxon now appeals, assigning several errors. For the reasons expressed herein, we affirm.
FACTS
At approximately 7:00 p.m. on September 17, 1992, defendant began the return trip from Bastrop to his home in Crossett, Arkansas. Driving his Chevrolet pickup at an excessive rate of speed northward on U.S. Highway 425, Wilcoxon approached the rear of a vehicle pulling a trailer. Although trav-elling uphill and around a curve in a clearly marked no-passing zone, the then eighteen-year-old man attempted to maneuver around the preceding automobile. Entering the opposing lane of traffic, and then apparently observing an oncoming Honda sedan, defendant applied his brakes. Nonetheless, his *388 truck struck the approaching car, injuring the driver and killing one passenger.
DISCUSSION Sufficiency of the Evidence
As his first assignment of error, Wil-coxon argues that his actions may constitute ordinary negligence, but do not rise to the level of criminal negligence. Therefore, he contends, the evidence is inadequate to support the guilty verdict. We disagree.
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
jjNegligent homicide is the killing of a human being by criminal negligence. LSA-R.S. 14:32. Criminal negligence exists when, “although neither specific nor general intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.” LSA-R.S. 14:12. Unlike general or specific criminal intent, criminal negligence is essentially negative. Rather than requiring that the accused intend some consequence of his actions, criminal negligence is found from the accused’s gross disregard for the consequences of his actions. State v. Martin, 539 So.2d 1235 (La.1989); State v. Rock, 571 So.2d 908 (La.App. 5th Cir.1990), writ denied, 577 So.2d 49 (La.1991). Ordinary negligence does not equate to criminal negligence. Thus, the state is required to show more than a mere deviation from the standard of ordinary care. State v. Rock, supra.
Physical and testimonial evidence demonstrated that Wilcoxon had been travelling over 70 miles per hour. Despite the clearly marked no-passing zone and his terrain-obstructed view, he purposely began to pass a Jeep Cherokee pulling a trailer at a point where the road approached the crest of a hill and curved to the right. Upon entering the opposing lane at excessive speed, he could not avoid colliding with the oncoming Honda in which the eleven-year-old victim rode as a passenger.
In determining that these actions amounted to criminal negligence, the trial judge noted that the actual impact occurred beside the overtaken Jeep. He further stated:
[T]o this Court the acts of driving at a reckless speed in passing on a hill or incline almost at it’s [sic] crest where there is no possibility of the maneuver being completed in safety amounts to a gross disregard of the safety of others and is gross deviation below the standard of care a prudent person is expected to maintain. For a cold sober person to do such seems to this Court to be a calculated risk undertaken without due regard for the safety of others.
Although defendant contends that the accident resulted when he hit a patch of water and lost control of his vehicle, the district court specifically rejected this version of the event, finding that the evidence proved the roadway to be dry at the time of the incident.
| sClearly, it is the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied, 532 So.2d 148 (La.1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. *389 State v. Reaves, 569 So.2d 650 (La.App.2d Cir.1990), writ denied, 576 So.2d 25 (La.1991); State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990).
In contending that the present situation reflects only ordinary negligence, defendant heavily relies on State v. Jones, 298 So.2d 774 (La.1974), and State v. Crawford, 471 So.2d 778 (La.App. 2d Cir.1985). Although the reviewing court in each of those matters concluded that the misconduct in question did not rise to the level of criminal negligence, both cases are distinguishable.
In Jones, the accused waited until reaching a passing zone to begin a maneuver around another vehicle. Upon discovering an oncoming ear, he slowly re-entered his own lane and, in doing so, struck the rear of the preceding automobile. Likewise, in Crawford, a panel of this court concluded that the sole fact that the defendant crossed the center line, when rounding a curve, did not establish gross negligence. However, in State v. Rock, supra, the fifth circuit affirmed two convictions of negligent homicide where a defendant not only crossed the center line, but also had been travelling, at least partially, in the opposite lane of a bridge clearly marked “Do Not Pass.”
When viewed in the light most favorable to the prosecution, the evidence in the case sub judice supports the negligent homicide conviction. Accordingly, this assignment of error lacks merit.

_[4Hearsay Evidence

As his second assignment of error, Wilcoxon contends that the trial court erred in allowing a witness to repeat statements by an unnamed truck driver concerning defendant’s speed.
To explain what transpired shortly after the collision, the state called an individual who stopped at the accident scene, Floyd Gaspard. When the witness began to present particulars related by a truck driver at the site, defendant objected to hearsay. Concurring with the prosecutor that the excited utterance exception controlled, see LSA-C.E. Art. 803(2), the trial court overruled the complaint. Thereafter, Gaspard stated that the defendant’s pickup had passed the trucker’s vehicle two or three miles before reaching the location of the collision. According to the unnamed declar-ant, Wilcoxon “was flying” and “going about 80 miles an hour,” causing the trucker not to be surprised upon later discovering that the Chevrolet had been involved in a wreck.
On appeal, Wilcoxon argues that, having resulted from reflective thought, the remarks of the truck driver cannot be considered spontaneous reactions to the events at hand. See generally State v. Henderson, 362 So.2d 1358 (La.1978). However, the introduction of hearsay, when merely corroborative or cumulative of other testimony, is harmless error. State v. Hall, 624 So.2d 927 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1182 (La.1993); State v. Moseley, 587 So.2d 46 (La.App. 2d Cir.1991), writ denied, 589 So.2d 1066 (La.1991).
In the case sub judice, several witnesses commented on the speed of the pickup without objection. Libby Bridges, driver of the Honda and grandmother of the victim, testified that a man assisting her when she regained consciousness (presumably the same truck driver who spoke with Gaspard) remarked that “the boy” went by doing 80 miles per hour. Kenneth Clinton, the motorist pulling the trailer that Wilcoxon attempted to pass, stated he had been travelling 55 miles per hour when defendant quickly overtook him. James Cunningham, working at a near by plant, noticed a truck similar to defendant’s drive past “a lot faster” than normal traffic on the highway. Finally, Ray JjHeard, the expert accident reconstructionist, concluded that defendant would have been exceeding 70 or 75 miles per hour at the time he began to leave skid marks.
Accordingly, even if Gaspard’s testimony should have been excluded on hearsay grounds, other evidence of the same fact came forth. Thus, any supposed error by the trial court is harmless.

Prior Crimes Evidence

In his next four assignments of error, Wilcoxon argues that the trial court committed reversible error in allowing the state *390 to question him about his previous driving record.
The prosecutor initiated his cross-examination of Wilcoxon by asking about certain occurrences following the accident. When the accused offered a contradictory version of the events, the district attorney began to impeach the witness by asking about his prior driving record. Defendant objected, noting that another division of the court had previously determined that the convictions could not be used to prove habit. Once reminded that the prior ruling only concerned the state’s case-in-chief, not impeachment of the witness, defense counsel leveled an objection based on relevancy, which the trial judge overruled.
In a criminal case, every witness who testifies puts his credibility at issue and subjects himself to examination relative to his criminal convictions. LSA-C.E. Art. 609.1(A); State v. Wiley, 614 So.2d 862 (La. App. 2d Cir.1993). Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed are admissible; however, when the witness denies the conviction or relates exculpatory matter, the details of the offense may become admissible. LSA-C.E. Art. 609.1(C).
Our review of the testimony reveals that, although the form of certain questions by the prosecutor may have been improper, he did not delve into prohibited details of the offenses as defendant argues in appellate brief. Concerning the prior traffic violations, the district attorney asked about each offense by name, and on occasion mentioned the penalty imposed. Only when Wilcoxon denied the event or offered an explanation for the | econviction (e.g., the judge convicted him of an improper right turn based on his prior record rather than the facts of the case, or the policeman involved had been harassing him) did the state touch upon the details of the case. We fail to find, as now contended, that the prosecution questioned defendant too extensively about his prior convictions.
Nor would any improprieties in the questions constitute reversible error in this bench trial. By virtue of his training in the law, a trial judge is able to disregard improper evidence which is possibly prejudicial. State v. Burns, 504 So.2d 124, 148 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1142 (La.1987); State v. Herrin, 562 So.2d 1, 7 (La.App. 1st Cir.1990), writ denied, 565 So.2d 942 (La.1990). Moreover, in the present case, the oral reasons for judgment reveal that the court did not rely on the indicated driving offenses, but determined defendant’s guilt based upon the evidence concerning the accident.
For the first time on appeal, defendant also argues that none of these violations should have been allowed into evidence in that his driving record stems exclusively from municipal convictions. Yet, he mentioned neither this fact nor this contention during the trial itself. Although, at the earlier Prieur hearing, the state offered proof of the prior offenses through records from the Municipal Court of Crossett, Arkansas, none of these documents came forth at trial. Granted, impeachment of a witness by evidence of such misdeeds is not permitted because a municipal offense is nót a “crime.” See State v. Ramos, 390 So.2d 1262 (La.1980); State v. Ladner, 619 So.2d 1144 (La.App. 1st Cir.1993), writ denied, 625 So.2d 1059 (La.1993). Nevertheless, a new basis for an objection cannot be raised for the first time on appeal. State v. Plater, 606 So.2d 824 (La.App. 2d Cir.1992).
Accordingly, these assignments of error lack merit.

Excessive Sentence

As his final two assignments of error, Wilcoxon contends that the trial court considered improper aggravating circumstances in deviating from the felony sentencing 17guidelines, and that the term of imprisonment imposed is constitutionally excessive. We reject both propositions.
Having timely moved for reconsideration under LSA-C.Cr.P. Art. 881.1, Wilcoxon is entitled to appellate review of his sentence. LSA-C.Cr.P. Art. 881.2(A); State v. Brown, 628 So.2d 207 (La.App. 2d Cir.1993). Pursuant to the sentencing guidelines, his offense of conviction and prior criminal history classify him into the 4E grid cell, recommending *391 24 to 36 months as a discretionary range of incarceration. La.S.G. §§ 205(C) and 401(A).
Of course, upward departures from the guidelines may be made when one or more aggravating circumstances significantly differentiate the particular situation from a “typical” case. La.S.G. § 209(A)(3); State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992), writ denied, 612 So.2d 55 (La.1993). In the matter at hand, as one of the aggravating circumstances, the trial court pointed to defendant’s lack of remorse.
At trial, Wileoxon never disputed that he caused the accident which resulted in the victim’s death. Even so, according to testimony, a police officer uninvolved in the investigation observed defendant openly harassing the deceased child’s mother. The Chief of the Collinston Police Department overheard the accused verbally abusing the family by asserting, “I’ve got this shit beat, they don’t have nothing and can’t prove nothing.” The official also reported Wileoxon telling the mother, “Shut up, diaper breath. There’s nothing y’all can do.” Certainly, such demonstrated cruelty toward the victim’s relatives and total lack of remorse falls within the broad category of “any other relevant aggravating circumstances which distinguish the case from the typical case,” as enumerated in La.S.G. § 209(B)(19). State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 So.2d 1208 (La.1993).
Defendant also complains that the five-year hard labor sentence is excessive. In examining such a claim, we consider whether the incarceration term is too severe, given the circumstances of the case and the background of the defendant. For a discussion of the parameters applied in that determination, see LSA-Const. Art. 1, § 20; State v. Barberousse, 480 So.2d 273 (La.1985); State v. Square, 433 So.2d 104 (La.1983); State v. Bonanno, 384 So.2d 355 (La.1980). In the case sub judice, not only did defendant’s actions cause the death of an eleven-year-old boy, but the child’s grandmother also received injuries in the accident. Our review of the record and the factors considered by the trial court negate the contention that the sentence constitutes an unnecessary infliction of pain and suffering. These assignments of error lack merit.
CONCLUSION
Accordingly, for the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.
NORRIS and LINDSAY, JJ., concur.