SUMMERS, Justice.
The grand jury of Natchitoches Parish returned a true bill charging that Jaca Calvin, Jr., negligently killed Susan M. Gordon. La.R.S. 14:32. He pled not guilty, waived trial by jury, and in a bench trial on October 30, 1975, he was found guilty as charged. Calvin was sentenced to serve three years in the parish jail, the last two years being suspended, Calvin being placed on supervised probation during that time.
One assignment of error is urged on this appeal. The defense asserts that it was error for the trial judge to find that de *501 fendant was criminally negligent as there was no evidence at the trial to support such a finding.
A study of the record, however, fails to disclose that the issue was properly presented to the trial judge by a defense motion for acquittal, either at the close of the State’s evidence or of all the evidence, as required by Article 778 of the Code of Criminal Procedure.[1] Nevertheless, the entire transcript of evidence has been reviewed, and the Court is satisfied that there was some evidence to support a finding that every essential element of the crime charged was established.
On November 16, 1974 Calvin was at Ernie’s Cafe in the Village of Natchez situated on Louisiana Highway No. 1 about six miles south of the town of Natchitoches. After spending about two hours there “messing around” and playing pool with friends, he entered a dark green 1966 Mercury sedan and drove north on Louisiana Highway No. 1. It was then late afternoon, between 5:30 and 6 o’clock. A misty rain was falling and it was getting dark.
As he proceeded northward he was observed by John H. Thompson, a former sheriff of Atlanta, Texas, who was following, and who was accompanied by his secretary. They testified that they followed Calvin for “three or four, possibly five miles.” Calvin’s car “was going all over the road.” “In other words, it was darting from one side of the road to the other.” At other times “he would gradually go over” from one side of the road to the other. On “some occasions it [Calvin’s car] would go almost off on the other side of the road” into the oncoming lane.
Calvin’s driving so alarmed Thompson and his traveling companion that they attempted to get in touch with law enforcement officials by telephone from Thompson’s car. However, they could not reach the operator. Thompson, realizing the danger, declared that he was determined to stop Calvin’s car somehow. He tried blinking his lights, blowing his horn and even bumped Calvin’s car several times in an effort to get him to stop, all to no avail.
Seeing that he was unable to get Calvin to stop, Thompson dropped back, fearing that he would be involved in what he considered to be an inevitable collision between Calvin and an oncoming vehicle. Shortly thereafter he saw Calvin collide head-on with a Plymouth automobile driven by Susan Gordon. At the time, Calvin had swerved into the opposite southbound lane in the path of the oncoming Plymouth. As a result of the collision Susan Gordon was severely injured and died four days later. Her companion Evelyn Breaux was severely injured, but survived. Calvin was also badly mutilated.
Additional evidence, both testimonial and physical, corroborates the fact that Calvin had driven into the southbound lane and collided head-on with the Plymouth driven by Susan Gordon.
The officer called to the scene had a cold, and because of this and Calvin’s severe injuries, he was unable to detect the odor of intoxicants on Calvin. When he arrived at the hospital with Calvin he promptly requested that a blood sample be drawn from Calvin and tested for alcoholic content. After waiting more than four hours, the test not having been performed, he abandoned the hope of a valid test for intoxication.
Calvin took the stand in his own behalf and was unable to satisfactorily explain the erratic driving or his refusal to stop despite Thompson’s repeated and emphatic efforts to compel him to do so. Rather, he testified that when the collision occurred he was looking down for a cigar that had fallen to the car floor. He didn’t see the Plymouth approaching, he was not wearing his glasses *502 and the windshield of the Mercury he was driving was cracked.
Without belaboring this opinion with the additional evidence, the facts narrated are some evidence upon which the trial judge could conclude that Calvin was guilty.
The crime of negligent homicide is defined and is punishable as .follows:
“Negligent homicide is the killing of a. human being by criminal negligence.
“The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
“Whoever commits the crime of negligent homicide shall be imprisoned, with or without hard labor, for not more than five years.” La.R.S. 14:32.
Criminal negligence is defined as follows:
“Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.” La.R.S. 14:12.
The determination of guilt in criminal cases is vested by the Constitution in the trier of fact. This Court is limited on appeal to the decision of questions of law. La.Const. art. V, § 5(C) (1974). As long as there is some evidence of the essential elements of the crime charged, this Court has no authority to disturb the verdict. In this case there is some evidence. We have no difficulty in concluding that Calvin’s conduct under these circumstances amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
For the reasons assigned, the conviction and sentence are affirmed.

. La.Code Crim.Proc. art. 778, as amended by Act 527 of 1975, provides:
“In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state’s evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
“If the court denies a defendant’s motion for a direct verdict or judgment of acquittal at the close of the state’s case, the defendant may offer his evidence in defense.”