342 So.2d 605 (1977)
STATE of Louisiana, Appellee,
v.
Kenny REEVES, Appellant.
No. 58173.
Supreme Court of Louisiana.
January 24, 1977.
*606 Herman I. Stewart, Jr., Kay, Stewart & Nichols, De Ridder, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Alfred R. Ryder, Dist. Atty., Terry J. Johnson, Asst. Dist. Atty., Oakdale, for appellee.
TATE, Justice.
We granted certiorari, 337 So.2d 522 (La.1976), to review the defendant's conviction for unauthorized use of movables, La.R.S. 14:68, for which he received a suspended 30-day sentence and was fined $100.
Facts.
The conviction is based on an incident involving the catching and selling of wild horses of the value of $71. The accused, a schoolteacher, had received permission from Mrs. Wesley Miller to catch and sell some wild horses which had belonged to her deceased husband.
The defendant caught one in a pasture on the west side of the highway and shared the proceeds with Mrs. Miller, per the agreement. He told her he would try to catch some more later.
The accused then openly organized another expedition at his school to catch some more Miller wild horses. On this expedition, the group captured three wild horses on another pasture where horses owned by the Millers ran, some twelve miles away from the first site, but on the east side of the highway.
The present charge was brought against him by Leon Miller, another Miller co-owner, on the basis that by intra-family partition the horses in this pasture on the east side of the highway belonged to him, not to Mrs. Wesley Miller (whose horses were only on the west side).
Mrs. Wesley Miller testified that, after the incident, she was informed that the horses in the east pasture had been given to Leon Miller by Levi Miller, her father-in-law, before his death. Until then, she had apparently assumed her late husband owned an interest in these Miller horses, as he did in those horses in the west pasture.
She further stated that she had expressly given the defendant Reeves permission to take horses only from the west pasture (undoubtedly owned by her husband Wesley). She conceded, however, that Reeves "might have took it for granted" that her permission was to take all Miller horses, whether in the east or west pasture.
Essentially based on the circumstance that Mrs. Miller's permission to Reeves was to take horses only from the west pasture, the trial court found that Reeves' taking of the horses from the east pasture (at best, by her testimony, only owned in part by Wesley Miller)[1] was unauthorized and without the consent of their true owner. Also, essentially based on this circumstance and also upon the distance between the two pastures, the trial court held that the defendant's intentional taking of Leon Miller horses was not excused by any "reasonable *607 ignorance of fact or mistake of fact", La. R.S. 14:16.
The defendant's contention that the evidence does not prove the crime charged.
The defendant contends that no evidence at all proves the crime with which charged.

(1)
He first argues, with considerable force, that the preponderance of the evidence proves that, pursuant to his permission from Mrs. Wesley Miller, he took the Miller horses from the east as well as the west pasture under the reasonable belief that he had permission from their owner to catch them and sell them and share the proceeds with her.
The issue thus noted is properly raised by a motion for acquittal, La.C.Cr.P. art. 778, or by a motion for a new trial, La.C.Cr.P. art. 851(1). State v. Butler, La., 331 So.2d 425.
If we construe the oral motion at the final argument before the trial court as a motion for acquittal, we are nevertheless unable on appellate review to reverse the present conviction.
The trial court's denial of a motion for acquittal may be reversed on appeal only where there is a total lack of evidence to prove the offense or any element of it. State v. Douglas, 278 So.2d 485 (La.1973). Sufficiency of the evidence is not within the scope of appellate review, which is restricted to issues of law. La. Const, of 1974, Article 5, Section 5(C).
Accordingly, this court cannot reverse the trial court's denial of a motion for acquittal where there is some evidence from which the trier of fact can reasonably conclude the crime and every element of it has been proved. State v. Calvin, 337 So.2d 500 (La.1976); State v. Williams, 310 So.2d 513 (La.1975); State v. Pryor, 306 So.2d 675 (La.1975).
The defendant's contention that no evidence proves that he took the horses without their owner's consent depends chiefly upon the consent he undoubtedly obtained from Mrs. Wesley Miller to take some Miller horses. He argues that, if he was mistaken in assuming that the horses in the east pasture belonged to her and were within the scope of her permission, this was a reasonable mistake of fact which precludes the requisite criminal intent. La.R.S. 14:16.
Nevertheless, based upon Mrs. Miller's testimony as well as the entirely different location of the pastures some twelve miles apart, we are unable to hold that no evidence at all supports the trial court's finding that the accused did not have Mrs. Miller's consent to take the horses in the east pasture. Likewise, for this reason we cannot say that no evidence supports the trial court's standing that the accused could not reasonably believe that Mrs. Miller's permission to him to take the horses in the west pasture also included permission to take the horses in the east one.
Since there is some evidence upon which the trial judge could base his finding of guilt, the limitations upon the scope of criminal review prevent us from considering whether in our view it sufficiently proves guilt.

(2)
The defendant further contends that, if any criminal intent at all is proved, it is to deprive the owner of his property permanently, not temporarily. Thus, he argues, the crime of theft, La.R.S. 14:67 may have been proved, but not that of unauthorized use of movables, La.R.S. 14:68: The chief difference between theft and the latter lesser crime is the lack of an intention in the latter case to deprive the owner permanently of his property. See Official Revision Comment, La.R.S. 14:68.
However, La.R.S. 14:5 provides: "An offender who commits an offense which includes all the elements of other lesser offenses, may be prosecuted for and convicted of either the greater offense or one of the lesser and included offenses. * * *" Cf. also State v. Madison, 319 So.2d 912 (La.1975) and State v. Cooley, 260 La. 768, 257 So.2d 400 (1972). (Of course, conviction *608 or acquittal of the lesser charge precludes subsequent prosecution for the greater offense, by reason of double jeopardy principles. La.C.Cr.P. art. 596.)
Unauthorized use is a lesser and included offense of theft, because theft includes all the elements of unauthorized useplus the intent to deprive permanently (instead of only temporarily) the owner of his property. Unauthorized use is, in fact, a responsive verdict to theft. La.C.Cr.P. art. 814(A)(23).
Accordingly, any evidence that the accused took the property of another with the intent to deprive him of it permanently (i. e., theft) is likewise sufficient to prove the lesser offense here charged (i. e., unauthorized use), even though in the latter case the requisite intent is only to deprive the owner temporarily of his property. We therefore find no merit to the defendant's contention.

The defendant's contention that the trial court committed an error of law. We granted certiorari primarily because we thought the trial court had erroneously held that an accused could be guilty of unauthorized use if he negligently used another's property without the latter's permission. To the contrary, the crime requires criminal intent. State v. Kelley, 241 La. 224, 128 So.2d 18 (1961).
The basis for this contention arose because of a trial court ruling at the conclusion of a preliminary examination. The trial court there held that there was not probable cause to hold the accused for theft, originally charged, because the evidence proved no specific intent to take Leon Miller's horses.
As a result of that ruling, the state filed a new information charging the accused with unauthorized use instead of with theft. The evidence taken at the preliminary examination was, by stipulation, submitted to the trial court for its ruling upon whether, on the basis of the same evidence, the accused was guilty of the lesser charge.
The defendant persuasively argues that, if the trial court found no criminal intent to take the property of another, the accused could not be convicted either of theft or of unauthorized use. If indeed the trial court held to the contrary, the record would present a reversible error of law.
Our difficulty is that the record does not demonstrate that, in finding the defendant guilty of the lesser charge, the trial court did so as a result of an error of law that guilt of the lesser charge does not require criminal intent. The record is silent as to whether, by the time of the trial on the lesser charge, the trial court had informed itself as to the correct legal principles applicable.
In a trial before a judge without a jury, the proper method of preserving such an issue of law for appellate review is to request the judge to charge himself before the verdict as to the disputed issue of law, La.C.Cr.P. art. 781, and to object to it if incorrect, La.C.Cr.P. art. 841, or if the trial court refuses to give a special charge correctly stating the law, La.C.Cr.P. art. 807. State v. Adams, 154 La. 873, 98 So. 402 (1923); State v. Rose, 147 La. 243, 84 So. 643 (1920).
In the present instance, in the absence of such procedure, we are unable to determine that the trial court decided the guilt of the accused on the basis of an incorrect appreciation of the legal principles applicable.

Decree
Finding no reversible error within the limitations of the scope of appellate review, we must affirm the conviction and sentence.
AFFIRMED.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent. If there is no intentional taking of property of another in the theft charge, and if the unauthorized use charge was tried on the same evidence, there was no intentional taking or use of *609 property of another in the unauthorized use case.
NOTES
[1] In fairness to the defendant, it should be pointed out that considerable testimony in the record indicated a common belief that the late Levi Miller, the brother of Leon and father of Wesley, had given the horses to Wesley.