630 So.2d 884 (1993)
STATE of Louisiana
v.
Michael STRAUGHTER.
No. 92-KA-1553.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*885 Harry F. Connick, Dist. Atty., Mark D. Pethke, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
M. Craig Colwart, Orleans Indigent Defender Program New Orleans, for defendant-appellant Michael Straughter.
Before BARRY and KLEES, JJ., and GULOTTA, J. Pro Tem.
KLEES, Judge.
Michael Straughter was charged by bill of indictment on August 8, 1991, with second degree murder, a violation of LSA-R.S. 14:30.1. At his arraignment on August 23, 1991, he pleaded not guilty. The trial court found probable cause and denied the Motions to Suppress the Evidence and Confession. A twelve-member jury found him guilty as charged after trial on February 20, 1992 and he was sentenced on February 25, 1992, to life imprisonment without benefit of parole, probation, or suspension of sentence. He now appeals, arguing (1) the trial court erred in overruling the defense's objection to the improper impeachment of a defense witness; (2) the State failed to present sufficient evidence to sustain the defendant's conviction beyond a reasonable doubt; (3) the trial court erred in overruling the defense's objection to a witness who did not prepare the report about which he was testifying.

FACTS:
At trial Wilbert Horton, Jr., testified that his friend, Michael Straughter, had spent the day on June 24, 1991, at his house cutting the grass and working on Horton's van. That evening the appellant asked Horton to take him to check on his sister, and the two men accompanied by a friend of Horton's drove to Josephine Street where they saw Odessa Straughter standing outside with two other people. Horton and the appellant got out of the van and began talking with Odessa and the others. Then Percy Dixon walked out of the house, and the appellant shot him twice from a distance of five feet. The appellant turned to Horton and said, "get me out of here." The men drove off in the van but were stopped by the police five minutes later.
Dr. Monroe Samuels, an expert in forensic pathology, testified that he reviewed the autopsy protocol filed by Dr. Newman of his office, and based on that review he determined that Percy Dixon died as a result of *886 two gunshot wounds to his brain. The defense attorney objected that the State had not established a basis for Dr. Samuel's testimony.
NOPD Officer Sean Brown testified that when he stopped a van on St. Charles Avenue near Euterpe Street, he saw a revolver being thrown from the passenger side of the van and two small bullets from the vent window. Brown arrested the appellant and advised him of his rights. Officer Brown then heard the appellant say, "I shot the guy because he beat my sister up." (Trial transcript, 28). A .38 caliber derringer was found in the van.
Odessa Straughter, the appellant's sister, testified that she told her brother several days before the shooting that Percy Dixon had threatened her. She said that on June 24, 1991, she and Dixon had had a fight during which he hit her and she hit him back. Although she had her back turned and did not see the shooting, Odessa did hear the shots fired when Dixon was killed.
Joey Straughter, the appellant's brother, testified that Percy Dixon had a "crush" on his sister and that they drank beer together. Joey Straughter had called the appellant the day of the shooting because he was upset that Dixon was in a fight with Odessa.

ERRORS PATENT
The record was reviewed for errors patent; there were none.

ASSIGNMENT ONE:
In the first assignment of error, the defense argues that the trial court erred in overruling the defense's objection to the improper impeachment of a defense witness. When Wilbert Horton, who had been one of the State's witnesses, was called by the defense to testify[1], he was asked whether he and the appellant had been beaten by the police when they were stopped, and he said that they had been beaten. On cross-examination the assistant district attorney asked Horton why he had never divulged that fact to the State. The defense attorney then objected, saying, "First of all, this was their witness," indicating that he was objecting to the State impeaching its own witness. When the trial court answered, "I have already ruled it's your witness," the attorney simply stated, "Note my objection." The defense attorney did not object on the grounds that the defense witness was improperly impeached because the prosecutor had not laid the proper foundation as required by La.C.E. art. 613. As this Court has stated:
A defendant must make known the grounds for his objection. La.C.Cr.P. art. 841. He is limited on appeal to those grounds articulated at trial and must point to the specific error so that the trial court has the opportunity to make the proper ruling and prevent or cure any possible error.
State v. Baker, 582 So.2d 1320, 1326 (La.App. 4th Cir.1991, writ denied, 590 So.2d 1197 (La.1992).
Because the defense attorney argues a different basis for his objection on appeal, the appellant effectively waived any objection to the testimony that the proper foundation was not established and cannot now raise it on appeal. This assignment of error is without merit.

ASSIGNMENT TWO:
In his second assignment of error, the defense argues that the State failed to present sufficient evidence to sustain the defendant's conviction beyond a reasonable doubt. In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *887 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir.1991). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green.
The appellant was charged with and convicted of second degree murder, which is defined in pertinent part as: "The killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm." R.S. 14:30.1. He contends, however, that the evidence supported a finding of manslaughter. R.S. 14:31 defines manslaughter in part as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed
As noted in State v. Camp, 571 So.2d 195, 200 (La.App. 4th Cir.1990):
Because "heat of blood" or "sudden passion" are mitigating factors which lessen the degree of culpability of the crime, and not essential elements of manslaughter, the defendant must establish them by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986); [State v. Vivian] Heck, [560 So.2d 611 (La.App. 4th Cir.1990)], supra.

See also State v. Tompkins, 403 So.2d 644 (La.1981); State v. Arabie, 496 So.2d 554 (La.App. 1st Cir.1986), writ den. 502 So.2d 565 (1987).
In his brief the defense argues the evidence supports a manslaughter conviction because "it can not be said beyond a reasonable doubt that the mitigating factors of manslaughter were not established by a preponderance of the evidence." He points out that appellant was aware of bad blood between his sister and Dixon, that he also knew Dixon had threatened his sister, that on the day of the incident the appellant became aware of a physical confrontation between his sister and Dixon, and that the appellant indicated he went to the scene to protect his sister. The problem with these facts, however, is that none gives any indication of "heated blood" or "sudden passion." None of the threats or physical abuse that the victim is supposed to have inflicted on appellant's sister is described in testimony at trial. Moreover, several days intervened between the time the appellant learned of the threats and the shooting. On the day of the shooting, the phone call from his brother occurred hours before the incident. Indeed, when asked whether the appellant was screaming or yelling at the time of the shooting, Horton said he was not. When asked if the appellant was upset, Horton answered, "Michael [the appellant] is the type of personit's hard to determine if he is upset or not because he is quiet."
The jurors were aware of the possibility that they could return a responsive verdict of manslaughter. Thus the jury verdict of guilty of second degree murder indicates that the jury concluded either that the provocation was not sufficient to deprive an average person of his self-control or that the average person's blood would have cooled by the time the appellant shot the victim. The jury decided this crime was second degree murder, and the evidence supports the jury's determination. A rational trier of fact could have concluded beyond a reasonable doubt that the appellant was guilty of the second degree murder of Dixon. This is without merit.

*888 ASSIGNMENT THREE:

In his third assignment of error, the appellant argues that the trial court erred in overruling the defense's objection to Dr. Samuel's testimony because he did not perform the autopsy or prepare the report about which he was testifying. However, under La.C.Cr.P. art. 105 and the jurisprudence, Dr. Samuel's testimony was admissible. La. C.Cr.P. art. 105 provides in pertinent part:
A coroner's report and a proces verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact.
And Comment (e) states:
Since the word "coroner" is defined in Art. 8 to include deputies and assistants, it is unnecessary for this article to state expressly that the reports and findings of the coroner's assistants are admissible in evidence.
Thus, Dr. Samuel's testimony based on the autopsy report was admissible into evidence to prove death and the cause thereof and was excepted from the hearsay rule. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Ducre, 596 So.2d 1372, 1381 (La.App. 1st Cir.1992), writ denied, 600 So.2d 637 (La. 1992). This assignment of error is without merit.
Accordingly, for the foregoing reasons expressed above the conviction and sentence of appellant Michael Straughter are affirmed.
AFFIRMED.
NOTES
[1] After the State rested its case, when the defense asked that Willie Horton be called, the following exchange occurred:

The trial court: "Willie Horton is your witness."
The defense: "He is a State's witness, your honor."
The trial court: "Mr. Deegan, you want to go back to school?"
The defense: "No, your honor."
The trial court: "We both know you're calling him, so he's not a State witness anymore. He has been relieved of that testimony."