637 So.2d 1230 (1994)
STATE of Louisiana
v.
Barbara A. WILLIAMS.
No. 93-KA-0251.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 1994.
*1231 Harry F. Connick, Dist. Atty. of Orleans Parish, Mark D. Pethke, Asst. Dist. Atty. of Orleans Parish, New Orleans, for plaintiff.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BARRY, BYRNES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
On November 22, 1991, the defendant, Barbara A. Williams, was charged with theft of goods valued under $100.00, this being at least the third such offense. She was arraigned on December 2nd and pled not guilty. Trial was set for January 16, 1992, but the defendant failed to appear, and an alias capias was issued for her arrest. When she appeared in court on July 15th, the court found her in contempt of court for her failure to appear in January and it sentenced her to serve six months for the contempt. On July 29th, a six-member jury found her guilty as charged. She was sentenced on August 12th to serve two years at hard labor.
The record reflects that on October 25, 1991, Patrick Workman was the store manager at Oshman's Sporting Goods store located at 5300 Tchoupitoulas Street. On that date, he saw the defendant Barbara Williams enter the store. Ms. Williams declined any help and walked back to the ladies department. Soon thereafter, Mr. Workman noticed that Ms. Williams had entered the men's warm-up suit department. Thinking that she may then have needed assistance, Mr. Workman walked back toward Ms. Williams. Mr. Workman testified that when Ms. Williams saw him approaching, she quickly turned and walked up an adjacent aisle toward the front of the store, carrying a blue warm-up suit. Ms. Williams then left the store with the suit, setting off the store's security alarm. Mr. Workman and the assistant manager followed Ms. Williams out of the store and saw her cross an adjacent parking lot. A few minutes later, a security guard escorted Ms. Williams, a companion, and the stolen clothing back to the store. Mr. Workman testified that a large security tag was found under the rack from where the warm-up suit was taken, but a smaller, less noticeable security tag was still attached to the suit.
Barbara Williams denied taking the warm-up suit. She testified that she was present in the store that day, and she insisted that Mr. Workman was not there at that time. She later admitted, however, that Mr. Workman was there. She testified that after looking only at ladies' shorts, she walked back to the front of the store. She admitted that the alarm sounded as she exited the door, but she theorized that the alarm had been set off by another customer who was also near the door. She testified that despite hearing the alarm, she continued on her way and entered a truck where her companion was waiting for her. She testified that a security guard then came up and insisted that she and her companion accompany him back to the store. She denied ever being in possession of the warm-up suit, and she maintained that when she returned to the store where Mr. Workman was got the suit and claimed she had stolen it.
There was a stipulation that Ms. Williams had six prior misdemeanor theft convictions. In addition, the State introduced evidence of these six convictions.
A review of the record for errors patent reveals there are none.

I.
By her first assignment of error, the defendant contends that the trial court erred by denying her motion in limine. The defendant was charged under R.S. 14:67 B(3), the theft of goods valued under $100.00, where the offender has been convicted two or more times previously of theft. In her motion, the defendant sought to limit to two the number of prior theft convictions introduced by the State, the minimum number needed to prove the crime for which she was charged.
*1232 Just prior to the start of trial, defense counsel first argued that all eight of the prior theft convictions listed in the bill of information should not be introduced until the State proved the defendant had been properly boykinized prior to pleading guilty in these cases. After reviewing these prior convictions, the court ruled that two of them could not be used. Defense counsel then objected to the use of more than two of the remaining six prior convictions, arguing that the charge against the defendant could be adequately proven with only those two cases, and the introduction of the other four would be more prejudicial than probative. The trial court refused to grant this motion. During trial, the defense stipulated that the defendant was the person convicted in the six prior cases. The State then introduced evidence of these six prior convictions, and defense counsel stated: "Subject to the objection previously made." At the close of the State's case, the State again introduced these exhibits, and defense counsel objected, and the court asked "as previously stated?" to which defense counsel replied, "Yes, sir."
The defendant now argues that the trial court erred by denying her motion in limine that the State be allowed to introduce only two of her prior convictions. In State v. Camp, 517 So.2d 1202 (La.App. 4th Cir.1987) this court considered a similar argument with respect to the proof of a charge of R.S. 14:95.1. The defendant had four prior felony convictions which were alleged in the bill of information as being the predicate offenses for the charge of being a convicted felon in possession of a firearm. The defendant argued that because only one of these convictions need be shown in order to prove the offense charged, the introduction of evidence of the other three convictions was unduly prejudicial. This court rejected this contention, stating: "But defendant does not specify exactly how he was prejudiced by the introduction of the evidence. When the first conviction was proved the essential element of the offense was proved. Proof of the other three was cumulative at worst in this case." Camp at 1203-1204. This court based its holding on State v. Sanders, 357 So.2d 492 (La.1978), also a case involving the proof of a charge of R.S. 14:95.1, where the State introduced evidence of two prior felony convictions. In also rejecting the defendant's argument that only one prior conviction should be shown, the Court noted: "Evidence of both of defendant's previous felony convictions was admissible at trial as proof of an element of the crime charged and the manner in which the present offense was committed, proof of either prior conviction being sufficient to support defendant's conviction for the present offense." Sanders at 494. The defendant in Camp argued that Sanders was distinguishable because only one extra prior conviction was shown in Sanders, while Camp had three extra prior convictions. This court rejected this reasoning. See also State v. Breaux, 598 So.2d 719 (La.App. 4th Cir.1992), writ den. 609 So.2d 254 (1992), also involving multiple prior convictions in a R.S. 14:95.1 case.
Here, the offense with which the defendant was charged was R.S. 14:67, not R.S. 14:95.1. However, the reasoning behind Sanders, Camp, and Breaux would apply also to this case. Thus, the trial court did not err by denying the motion in limine.
The defendant acknowledges Camp, but she argues that this case is distinguishable because the defense stipulated to the prior convictions and the State was still allowed to introduce evidence of the six prior convictions. The defendant argues that the introduction of these exhibits was not very probative due to the stipulation, and they were highly prejudicial in that they merely "served to paint the defendant as an evil person" who was guilty due to her prior crimes. In support, she cites State v. Gilmore, 332 So.2d 789 (La.1976), where the Court discussed the broad discretion afforded a trial court in deciding whether or not to allow the introduction of evidence to which the defense had offered a stipulation.[1]
However, it must be noted that the defendant failed to object to the introduction of the evidence of the six prior convictions on this ground. As noted above, the only objection *1233 to this evidence was "as previously made", that being that evidence of only two of these prior convictions should be introduced. The record does not reflect that the defendant objected to the introduction of evidence of these prior convictions based upon the fact that it had already stipulated to their existence. This court has held that a new basis for an objection cannot be raised for the first time on appeal. State v. Michael Straughter, 630 So.2d 884 (La.App. 4th Cir. 1993); State v. Berryhill, 562 So.2d 1105 (La.App. 4th Cir.1990). Thus, this claim is not properly before this court. In addition, even in Gilmore, cited by the appellant, the Court noted that even though with the existence of a stipulation "the prejudicial nature of the evidence assumes added significance and correspondingly reduces the State's legitimate interest in its admission", Gilmore at 796, a trial court has wide discretion to determine if a stipulation will render additional evidence inadmissible. However, because the defendant failed to object on this ground, this claim should not be considered. This assignment has no merit.

II.
By her second assignment, the defendant contends that the trial court erred by failing to list additional responsive verdicts on the verdict sheet given to the jury. The defendant was charged with theft of goods valued under $100.00, having been previously convicted of theft at least two times. The verdict sheet given to the jury listed this charge, attempted theft of goods valued under $100.00, having been previously convicted of theft at least two times, and not guilty. The defendant argues that two additional responsive verdicts should have been added to this list: theft of goods valued under $100.00 and unauthorized use of a movable. As noted by the defendant, the crime with which she was charged is not included within the responsive verdict list of C.Cr.P. art. 814. She argues that as per art. 815 the responsive verdicts would be: guilty; "guilty of a lesser and included grade of the offense even though ... the lesser offense a misdemeanor;" or not guilty. The defendant contends that theft of goods valued under $100.00 and unauthorized use of a movable are also lesser included verdicts which should have been included on the verdict sheet. She bases this argument in part on State v. Reeves, 342 So.2d 605 (La.1977), where the Court stated that unauthorized use of a movable is a lesser and included offense to theft. The Court in Reeves based this holding in part on the responsive verdicts for theft listed in art. 814.
The defendant acknowledges that trial counsel failed to move for these additional verdicts or failed to object to their omission. As per C.Cr.P. arts. 801 and 841, the failure of counsel to object at trial precludes the raising of this issue on appeal. See State v. Berniard, 625 So.2d 217 (La.App. 4th Cir. 1993); State v. Dobson, 578 So.2d 533 (La. App. 4th Cir.1991), writ den. 588 So.2d 1110 (1991). However, the defendant then states that relief is still warranted because her counsel was ineffective for such failure.
As noted by this court in State v. Leon, 623 So.2d 1368, 1370 (La.App. 4th Cir.1993):
A claim of ineffective assistance of counsel is more properly raised in an application for post conviction relief. State v. Truitt, 500 So.2d 355 (La.1987); State v. Prudholm, 446 So.2d 729 (La.1984). Nevertheless, when the record contains sufficient evidence to resolve the issue, the matter may be considered on direct appeal in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the relator. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable *1234 probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal.
In support of her assertion that trial counsel was ineffective for failing to insist that these "responsive verdicts" were included, the defendant cites State v. Wright, 598 So.2d 493 (La.App. 2nd Cir.1992), where the defendant was charged with one count each of being a convicted felon in possession of a firearm and of illegal possession of stolen goods, apparently valued at least $100.00 but less than $500.00. The defendant argued that the trial court erred by: (1) failing to charge the jury on the responsive verdict of attempt possession of a firearm by a convicted felon; and (2) including the "responsive" verdict of attempt possession of stolen goods valued over $500.00. As here, counsel failed to object to these errors, but the defendant argued that his counsel was ineffective for failing to do so. Citing the Strickland standard, the court found that there was no rational reason for counsel's failure to object to these errors. The court then noted that with respect to the firearm charge, attempt was a responsive verdict, and if counsel had objected to its omission, the defendant's conviction probably would have been reversed. The court acknowledged that the evidence supported a finding of guilty as charged. However, because the jury had returned a responsive verdict of attempt possession of stolen property on the other count, the court held that there was reasonable probability that the jury could have returned an attempt verdict on the firearm count. Thus, the defendant was unduly prejudiced by counsel's failure to object, and the firearm conviction was reversed. With respect to the possession of stolen goods count, the court agreed that the responsive verdicts for R.S. 14:69, although not provided in art. 814, should track those given in art. 814 for R.S. 14:67. The court acknowledged that the trial court erred by including the "responsive" verdict,[2] but the court found that the defendant was not unduly prejudiced because the evidence squarely supported the jury's verdict, which was a lesser verdict that then erroneously given "responsive" verdict.
This court adopted the reasoning of Wright in Leon, where the defendant was charged with and convicted of the possession with the intent to distribute cocaine. The list of responsive verdicts presented to the jury did not include the responsive verdict of attempt possession with the intent to distribute, even though this offense is a responsive verdict under art. 814. Instead, in its place the verdict sheet included guilty as charged and guilty of possession with the intent to distribute, a mere restatement of the charged crime. Counsel failed to object at trial, although new counsel raised this error in a motion for new trial. On appeal, counsel argued that trial counsel was ineffective for failing to object to this error. This court, following the reasoning of Wright, found that there was a reasonable probability that the jury could have returned a verdict of attempt, noting that the "responsive" verdict was merely a restatement of the charge. The court stated:
Therefore, because the elements of the crime charged and incorrectly stated responsive verdict were so intertwined and the responsive verdict was the next applicable verdict, there is a reasonable probability that, had the jury been given the correct responsive verdict that there may have been a different outcome.

Leon at 1371.
Here, one of the "responsive" verdicts which the appellant contends should have been given was theft of goods valued under $100.00, first offense, apparently an argument that this is responsive because the jury could have found that she did not have at least two prior theft convictions. A similar argument, however, was rejected by this court in State v. Thornton, 611 So.2d 732 *1235 (La.App. 4th Cir.1992). The defendant was charged with the illegal carrying of a weapon, second offense. At trial, he stipulated that he had a prior conviction for the illegal carrying of a weapon. On appeal, he argued that the trial court erred by not providing the illegal carrying of a weapon, first offense, as a responsive verdict. This court disagreed. The court acknowledged that under art. 803 a trial court shall charge a jury with the law applicable to each responsive verdict. The court also stated:
However, La.C.Cr.P. art. 814(C), which we believe is generally applicable to responsive verdicts whether or not they are specifically enumerated in art. 814, provides:
Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.
"Due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." State v. Henry, 449 So.2d 486 (La.1984), quoting Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).
A stipulation has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact. See McCormick, Evidence Sec. 254 (4th Ed. 1992). Defense counsel stipulated that defendant had been previously convicted of illegally carrying a weapon, thus relieving the State of the burden of proving that fact. Once that stipulation was made or entered into, there was no evidence warranting a jury instruction on the lesser and included verdicts of illegal carrying of a weapon, first offense, or attempted illegal carrying of a weapon, first offense. The only evidence that would have warranted such an instruction would have been evidence tending to prove that defendant had never been convicted of illegally carrying a weapon before. There was no evidence tending to establish such a fact. Under La.C.Cr.P. art. 814(C), and State v. Henry, supra, the trial court correctly excluded the responsive verdicts relating to first offense illegal carrying of a weapon.

Thornton, at 736-737.
Here, the defendant stipulated to the fact that she was convicted of six prior theft convictions. As in Thornton, the State was then relieved of the burden of proving this element of the charged crime, and her admission precluded a reasonable finding by the jury that she was guilty only of misdemeanor theft, first offense. Thus, even had counsel objected, as per Thornton the trial court could have properly excluded this "responsive" verdict. Therefore, the defendant suffered no prejudice from counsel's failure to move for this "responsive" verdict.
Likewise, with respect to the unauthorized use "responsive" verdict, the trial court could have excluded this verdict as well. The defendant was seen exiting the store with the men's warm-up suit. She was seen getting into a car with the suit, and she only returned the suit to the store under the compulsion of a security guard who stopped the car and escorted her and her companion back to the store. The defendant's assertions that another customer must have triggered the alarm and that the manager planted the warm-up suit on her were not believed by the jury, and could have easily also been discounted by the trial court. Thus, with this "responsive" verdict, even if it had been raised the trial court could have found that the there was no reasonable probability that the jury could find that the defendant did not have an intent to deprive the owner permanently of the suit, and thus could have excluded this verdict. Thus, the defendant also was not unduly prejudiced by trial counsel's failure to move that this offense be listed as a responsive verdict in this case.
Because it does not appear that there is a reasonable probability that the jury would have returned a verdict of unauthorized use of a movable or of possession of stolen goods valued under $100.00, first offense, it cannot be said that trial counsel was ineffective for failing to object to the trial court's failure to *1236 include these "responsive" verdicts. This assignment has no merit.

III.
By her third assignment of error, the defendant contends that the trial court erred by finding her in contempt of court and sentencing her to serve six months imprisonment. This contempt finding was based upon her failure to appear for trial on January 16, 1992, and was imposed when she finally appeared in court on July 15, 1992. The defendant argues that the trial court erred by finding her in contempt because her failure to appear constituted a constructive contempt, not a direct contempt, and the trial court did not follow the procedures for finding someone in constructive contempt, which includes filing a rule to show cause and service of the rule not less than forty-eight hours prior to the contempt hearing. See C.Cr.P. art. 24.
The defendant failed to appear for trial on January 16, 1992. A capias was issued for her arrest on that date, and she was arrested in early July. On July 15th, she appeared in court and told the court that she did not appear on January 16th because she was at the hospital with her father, who died of a stroke on that date. She testified that "Tommy Cotton" told her that the case had been reset to the "27th", but she was vague as to what month it was reset and she testified that this person had told her of the new date in June. She could give no explanation of why she did not appear between January and June, when "Mr. Cotton" supposedly told her the trial had been reset. The court then found her in contempt.
C.Cr.P. art. 20 defines contempt of court as: "an act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." Art. 20 also provides that there are two types of contempt, direct and constructive. Art. 21 provides in part: "A direct contempt of court is ... a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record.... A direct contempt includes, but is not limited to, any of the following acts:... (2) Contumacious failure to comply with a subpoena or summons to appear in court, proof of service of which appears of record".
Here, it appears that the defendant was served in open court on January 6, 1992, to appear for trial on January 16th. The minute entry of January 6th notes: "The defendant was subpoenaed in court." As noted in art. 21, failure to comply with a subpoena, proof of service of which appears of record, constitutes direct contempt. Thus, it appears that the defendant's failure to appear in court was a direct contempt.
The defendant cites cases to support her claim that her failure to appear for trial was a constructive contempt, not a direct contempt. However, in each of those cases, there was no evidence in the record that the person found to be in contempt had been served with a subpoena to appear on that date. See In re Merritt, 391 So.2d 440 (La. 1980); Kidd v. Caldwell, 371 So.2d 247 (La. 1979) (on rehearing).[3] Because proof of service of the subpoena to appear for trial on January 16th appears in the record, the defendant's failure to appear for trial falls within the provisions of art. 21, making it a direct contempt. Thus, the defendant's contention that such failure to appear resulted only in a constructive contempt has no merit. As per art. 22, a person charged with direct contempt need only be given "an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed." The transcript of the contempt hearing shows that the trial court complied with the procedure set forth in art. 22.
The defendant lastly argues that the trial court erred by setting forth the reasons for imposing the length of sentence. In support, he cites State v. Minnieweather, 587 So.2d *1237 1190 (La.App. 2nd Cir.1991), where the court held that when imposing a contempt sentence, the trial court must comply with art. 894.1, as it existed at the time of sentencing in that case. The defendant argues that because the trial court did not give any reasons for imposing the six month sentence, the sentence should be vacated and the case remanded for resentencing. However, there is no indication that the defendant preserved this claim for review. The defendant was sentenced on the contempt charge in 1992, after the effective date of C.Cr.P. art. 881.1, which requires either an objection to sentence at the time or the filing of a motion to reconsider the sentence. Here, the defendant did neither. Thus, this claim is not preserved for review on appeal. Assignment three has no merit.
For the foregoing reasons the defendant's convictions and sentences, both on the contempt finding and the theft charge, are affirmed.
AFFIRMED.
NOTES
[1] The evidence in Gilmore was purportedly gruesome photographs, to which the defense objected, and the defense offered to stipulate as to the location and severity of the victims' wounds.
[2] This reasoning only works if the defendant was indeed charged with possession of stolen goods valued at least $100.00 but under $500.00, because then the attempt possession of stolen goods valued at least $500.00 would not be a lesser included offense.
[3] See also State v. Clay, 388 So.2d 808 (La.1980), cited by the State. In In re Grand Jury Subpoenas, 363 So.2d 651 (La.1978), the witnesses' failure to reappear for the continuation of a hearing before the grand jury was found to be a constructive contempt. The witnesses were told by the foreman of the grand jury at the end of the day to reappear on the next scheduled grand jury day.